STATE of South Dakota, Plaintiff
and Appellee,

v.

Darrell MARTIN, Defendant
and Appellant.

No. 14687.

Supreme Court of South Dakota.

Considered on Briefs February 5, 1985.

Decided May 1, 1985.

Sherri L. Sundem, Asst. Atty. Gen., Pierre, for plaintiff and appellee; Mark V. Meierhenry, Atty. Gen., Pierre, on the brief.

Todd D. Hauge of Bakewell, Hauge & Vander Heide, Custer, for defendant and appellant.

WOLLMAN, Justice.

Defendant appeals from a judgment and order of the circuit court that reinstated the three-year suspended portion of his prison term and the balance of his suspended fine. We affirm.

On February 20, 1979, defendant was convicted of third-degree burglary by a Custer County jury. On March 14, 1979, defendant was sentenced to eight years in the South Dakota State Penitentiary and fined $7,000.00. Three years of the penitentiary sentence and $4,000.00 of the fine were suspended on the condition that defendant make restitution to the victim in the amount of $432.00 within eighteen months of the date of sentencing, reimburse Custer County for funds expended for defendant's court-appointed counsel fees, and reimburse defendant's court-appointed counsel for the difference between the total legal fees owing and the amount paid by Custer County for legal services rendered. Defendant's conviction was affirmed on appeal. *State v. Martin*, 287 N.W.2d 102 (S.D.1980).

Defendant became eligible for parole on February 28, 1980, and was paroled on

September 30, 1980. He remained under parole supervision until December 14, 1982.

On July 2, 1982, Scott A. Schuft, defendant's parole agent, informed defendant by letter that a restitution and fine payment schedule of $30.00 per month had been approved by the court. The letter also stated that failure to make consistent payments could result in a violation hearing. The letter advised defendant that the suspended portion of his sentence would not end until December 14, 1985. Defendant was also informed that he would be under Schuft's supervision until that time.

On January 3, 1983, (erroneously dated January 3, 1982), Schuft wrote to defendant, enclosing a copy of defendant's certificate of discharge from parole and advising him that his suspended sentence supervision had begun on December 14, 1982, and would end on December 14, 1985. Defendant was also informed that it was still necessary for him to report to Schuft every month.

Schuft wrote to defendant on January 20, 1983, because of defendant's failure to send in a monthly report for December. The letter advised defendant that he was to meet with Schuft on January 25, 1983. Defendant failed to appear at the meeting.

On January 26, 1983, Schuft received a letter from a Rapid City attorney regarding defendant's suspended sentence. The letter stated in part:

It is Mr. Martin's position that he in effect has served the entire eight (8) years because he served for five (5) years and was forgiven by the warden the additional part of his sentence because of good time. He contends that the additional suspended sentence would actually be an increase in his jail term after the judgment of sentence issued and would be impermissible under our statutes.

Would you please review this matter, keeping in mind that the State of South Dakota has certified to Mr. Martin that

he has been discharged from his entire sentence and was restored to his full rights of citizenship as of December 14, 1982.

After receiving this letter, Schuft went to defendant's residence but was unable to find defendant.

On February 22, 1983, Schuft sent a letter to the Custer County State's Attorney outlining the problems he was having with defendant. As of that date defendant had paid a total of $60.00 under the restitution plan, $150.00 on the fine, and nothing on the attorney fees. The Custer County State's Attorney filed a petition for revocation of probation on March 10, 1983.

On August 1, 1984, the matter was brought on for hearing before the circuit court. The court determined that defendant was in violation of the terms and conditions imposed upon him at the time of sentencing for the felony conviction. The court specifically found that defendant had failed to make restitution payments to the victim within eighteen months, that he had failed to reimburse Custer County for court-appointed counsel fees, that he had failed to pay his fine, and that he had failed to remain in contact and keep appointments with his parole agent. Although there was some evidence that defendant was partially disabled, the trial judge found, based upon his in-court observation of defendant, that defendant was not totally disabled and that he had some ability to work and to make at least partial payments on the fine and fees assessed against him. Accordingly, the trial court revoked the suspended portions of the sentence and ordered that defendant be returned to the South Dakota State Penitentiary to serve the remaining three years of the original sentence and that defendant be required to pay the entire amount of the fine originally imposed.*

Although defendant has raised three issues on appeal, we conclude that the first two issues have been answered adversely

---

* We note that SDCL 23A-27-19, as amended by the 1985 Legislature (SB 236), effective July 1, 1985, places with the Board of Charities and

Corrections the jurisdiction to revoke the suspended portion of a penitentiary sentence.

to him by our decisions in *State v. Adams*, 360 N.W.2d 519 (S.D.1985); *Application of Adams*, 360 N.W.2d 513 (S.D.1985); and *State v. Holter*, 340 N.W.2d 691 (S.D.1983). Accordingly, we will discuss these issues no further.

Defendant's principal contention is that he has been unlawfully and unconstitutionally imprisoned due to his indigency. Before addressing this issue, we review briefly some basic principles regarding revocation proceedings.

■ "A proceeding to revoke probation is not a criminal prosecution." *State v. Burkman*, 281 N.W.2d 442, 443 (S.D.1979). Before a trial court may revoke probation, it must be "reasonably satisfied" that a violation of the terms and conditions of probation has occurred. *Id.* *See also State v. Olson*, 305 N.W.2d 852 (S.D.1981).

■ Probation revocation proceedings should be flexible enough to permit the trial court to consider evidence that would not be admissible in a criminal trial. *State v. Dammer*, 290 N.W.2d 869 (S.D.1980).

With these principles in mind, we turn to defendant's contention that he has been unconstitutionally deprived of his freedom solely because of his inability to pay the court-ordered restitution, fine, and attorney fees. In *White Eagle v. State*, 280 N.W.2d 659 (S.D.1979), we held that a condition of probation that defendant repay attorney fees could be enforced only upon a finding by the court that the defendant was capable of making such payment. In *State v. Huth*, citing our decision in *White Eagle*, we held that "probation cannot be revoked for nonpayment of fees and costs as a condition of probation if [probationer] does not have the ability to pay." 334 N.W.2d 485, 490 (S.D.1983).

Shortly after our decision was rendered in *Huth*, the Supreme Court of the United States held that

> in revocation proceedings for failure to pay a fine or restitution, a sentencing court must inquire into the reasons for failure to pay. If the probationer willfully refused to pay or failed to make suffi-

cient bona fide efforts legally to acquire the resources to pay, the court may revoke probation and sentence the defendant to imprisonment within the authorized range of its sentencing authority.

*Bearden v. Georgia*, 461 U.S. 660, 672, 103 S.Ct. 2064, 2072–73, 76 L.Ed.2d 221, 233 (1983).

■ We conclude that the trial court's findings with respect to defendant's ability to make at least some payment towards restitution, the fine, and his attorney fees find adequate support in the record. Granted, defendant apparently does suffer from some physical disability. On the other hand, however, there is evidence that he made some payments during the early portion of the probation period. Defendant himself did not testify at the revocation hearing, notwithstanding his attorney's advice that he do so. The letter from his apparently privately retained attorney to agent Schuft stands as a stark denial of defendant's present claim that he is unable to make at least some payments as required by the conditions of his probation. The letter is nothing more than an expression of defendant's unilateral determination that he was no longer bound by the terms and conditions of probation. In a word, it appears that defendant was content to flout the trial court's order.

■ In addition to the adequacy of the evidence to support the trial court's finding that defendant had the ability to make at least some payment on his court-ordered obligations, the trial court's finding that defendant had failed to keep in contact with agent Schuft as required by the directives given to him by agent Schuft is more than adequately supported by the record and constitutes an adequate, independent ground for the revocation of defendant's probation.

The judgment is affirmed.

MORGAN, J., and WUEST, Circuit Judge, Acting as Supreme Court Justice, concur.

FOSHEIM, C.J., and HENDERSON, J., dissent.

FOSHEIM, Chief Justice (dissenting).

Martin was sentenced on March 14, 1979. Three years of his eight year sentence was suspended. He was paroled and released from the penitentiary on September 30, 1980. On August 4, 1984, the trial court revoked the suspended portion of the sentence and returned Martin to the penitentiary.

In *State v. Huftile*, 367 N.W.2d 193 (S.D. 1985), we said:

A penitentiary inmate is accordingly eligible for release either by the Board of Charities and Corrections, SDCL 24–15–8, or a suspended sentence from the trial court. Via either route, the inmate becomes a parolee under the supervision of the Board of Charities and Corrections. *See*, SDCL 24–15–14; SDCL 23A–27–19. Under SDCL 24–15–24 only the Board of Pardons and Paroles may "revoke the parole and reinstate the terms of the original sentence and conviction." Uncertainty, if not chaos will result if a parolee is required to satisfy two supervisors; the sentencing court and the Board of Charities and Corrections, each with a different set of restrictions and conditions.

Affirming this revocation is inconsistent with *Huftile* and fuels the very confusion we there tried to settle.

HENDERSON, Justice (dissenting).

CHRONOLOGY

| | |
|---|---|
| February 20, 1979 | Defendant convicted. |
| March 14, 1979 | Defendant sentenced to 8 years in State Penitentiary, fined $7,000, 3 years of sentence suspended. |
| February 28, 1980 | Defendant eligible for parole. |
| September 30, 1980 | Defendant paroled. |
| December 14, 1982 | Defendant's parole supervision ends. |
| January 3, 1983 | Defendant receives certificate of discharge from parole. |

Defendant, now appellant, was in prison for 18 months. From date of conviction to receipt of parole discharge, nearly 4 years elapsed. Believing he had paid his debt to society, he protested in writing, by an attorney, the Judicial System's attempt to reach out and supervise him after his discharge. He is correct. *See Application of Adams*, 360 N.W.2d 513, 517 (S.D.1985) (Henderson, J., dissenting, and Fosheim, C.J., joining "Rationale Two" of dissent); *State v. Adams*, 360 N.W.2d 519, 522 (S.D.1985) (Henderson, J., and Fosheim, C.J., dissenting); *State v. Griffee*, 331 N.W.2d 576 (S.D. 1983); *State v. Means*, 268 N.W.2d 802 (S.D.1978). *See also, Dunker v. Brown County Bd. of Educ.*, 80 S.D. 193, 121 N.W.2d 10 (1963); *Sorenson v. State*, 604 P.2d 1031 (Wyo.1979); S.D. Const. art. IV, § 3 and art. XIV, §§ 1 and 2; *accord* with my view: *In re Question Concerning State Judicial Review*, 199 Colo. 463, 610 P.2d 1340 (1980).

As we have before us an invasion of the domain of the executive branch of government by the judicial branch of government, I dissent. Further, I dissent because neither the trial court nor the majority opinion recognizes the difference between a suspended sentence (such as the case here) and probation. A revocation of probation cannot ensue from a suspended sentence. Moreover, parole and probation are distinctly separate concepts and cannot be merged.